UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ALEASE B. GAINEY, | ) | Civil Action No.: 4:06-3373-RBH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| KINGSTON PLANTATION, SHELIA | ) | |
| E. MORGAN INTERIORS, and JASON | ) | |
| E. SIMMONS, | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

In the present case, Plaintiff alleges causes of action for sexual discrimination, racial discrimination, and discrimination based on national origin, all pursuant to 42 U.S.C. § 1981, as well as state law causes of action for false arrest, battery, emotional outrage, and negligence.  Presently before the Court is Defendant Sheila Morgan Interiors' (SMI) Motion for Summary Judgment (Document # 23).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## II.    FACTUAL ALLEGATIONS

At the times relevant to this action, Plaintiff was employed by Defendant Hilton Hotels Corporation (Hilton), incorrectly identified in the Complaint as "Kingston Plantation," as a housekeeper.  Plaintiff Aff. at ¶ 2.  Jason Smith (Smith), improperly identified in the Complaint as "Jason E. Simmons," was hired by SMI as an installer and delivery man from December 2003 until

February 2004, and then rehired in October 2004.  Morgan Aff. at ¶ 4.

Plaintiff testified that she first encountered Smith around December 2, 2004, as she was cleaning a unit in the Margate Tower of Kingston Plantation.  Plaintiff Dep. at 41.  While she was cleaning the unit, she heard someone attempt to enter the unit with a key.  Id. at 42.  When the person was unable to unlock the door, he rang the doorbell, and Plaintiff answered.  Id.  The person at the door told Plaintiff he needed to check on something as he entered the room.  Id.  The person was in the room for approximately five to seven minutes before leaving.  Id.  After he left, Plaintiff went to her cart, which she had left outside the door to the unit, and found a note that said, "For a good time call" and a telephone number.  Id. at 42, 44.  Smith testified that he never left such a note for Plaintiff.  Smith Dep. at 24

Plaintiff testified that the note made her feel uncomfortable so she gave it to her supervisor, Frances Wilson. Plaintiff Dep. at 42-43.  Ms. Wilson told her that she would inform Sharla Enstrom about the incident and they would investigate.  Id. at 43.  Plaintiff testified that she does not know what happened from there.  Id.  She further testified that she did not see who left the note, but she assumed it was the same man who entered the room because it was off season at the time and so not many people were there, although there were probably other maintenance people that would be walking down the hall.  Id. at 44-45.

Plaintiff testified that on December 11, 2004, she was working in the Brighton Tower at Kingston Plantation on the fifteenth floor when she saw Smith exit unit 1502.[1]  Id. at 47.  Smith

---

[1]Prior to Saturday, December 11, 2004, Smith was working on a project for one of the designers at SMI at a unit located in Kingston Plantation.  Morgan Aff. at ¶ 6.  Sheila Morgan asserts that, upon information and belief, Smith continued working on the project in that unit on December 11, 2004, without the knowledge or permission of SMI.  Id.

asked Plaintiff if she was going to be cleaning that particular unit. Id. at 47-48.  Plaintiff responded "no" and went into unit 1501 to perform her duties.  Id. at 48.  Plaintiff did not recognize Smith at that time as the person she encountered on December 2, 2004.  Id. at 49.  She thought possibly he was a guest in unit 1502.  Id. at 50.  When she came out of unit 1501 to get some supplies, Smith came out of unit 1502, wearing only boxer briefs, a baseball cap and shoes and socks.  Id. at 49.  He asked Plaintiff for a washcloth.  Id.  Smith also asked her if she wanted to take a break and Plaintiff told him "no."  Id. at 51.  When she handed him a washcloth from her cart, he grabbed her right arm and started to pull her.  Id. at 52.  Plaintiff screamed, pulled away and ran down the stairs to a coworker in unit 901.  Id.  At the time he grabbed her, Plaintiff recognized him as the same man she encountered on December 2, 2004, because he was wearing the same hat as before.  Id.

Smith's testimony of the events of December 11, 2004, differs from Plaintiff's testimony. Smith testified that he was spackling and painting in unit 1502 on December 11, 2004.  Smith Dep. at 24, 27.  When he first saw Plaintiff in the hall with her cart, he asked her if she was planning to clean the unit in which he was working because his work would have prevented her from doing much cleaning.  Id. at 28.  While working in the unit, he spilled paint on the floor and on his pants. Id. at 29.  Because he had to deliver furniture to some clients when he finished in unit 1502, he took his pants off and attempted to clean off the paint before leaving.  Id.  He hung his pants over the balcony to dry because the unit did not have a washer and dryer.  Id.  He opened the door to the hallway to see if Plaintiff's cart was still out there so he could get a few towels to clean up his mess. Id. at 29-30.  When he saw Plaintiff, he attempted to stand behind the door so she would not see that he was not wearing pants.  Id. at 30.  He asked her for a towel or washcloth to clean up the mess he had made with the paint.  Id.  She did not respond, but handed him a washcloth.  Id.  Smith testified

that he did not grab Plaintiff.  Id.

The coworker in unit 901 told Plaintiff she did not think Smith was a guest because Sheila Morgan had people working in that unit.  Plaintiff Dep. at 54.  Plaintiff later saw Smith getting into an SMI van and told a supervisor he was the one who grabbed her.  Id.  Subsequently, Sheila Morgan was contacted regarding Smith and assisted in providing a photograph of Smith for Plaintiff to review.  Id. at 59.  From the photograph, Plaintiff identified Smith as the perpetrator of the assault. Id.

In response to Defendant's Motion, Plaintiff submits an affidavit in which she asserts that, following the December 2, 2004, incident with the note, she complained to her supervisors about "the unwarranted sexual harassment from Defendant [Smith] as Defendant [SMI]'s agent.  Upon information and belief, Kingston Plantation forwarded my complaint to Sheila Morgan."  Plaintiff Aff. at ¶ 4.  However, this affidavit testimony is inconsistent with her deposition testimony in which she states that she identified Smith as working for SMI after the December 11, 2004, incident, when she saw him get into an SMI van.  It is also inconsistent with a letter sent by Hilton to Sheila Morgan, signed by Plaintiff, dated December 12, 2004, in which Plaintiff describes the events of December 2, 2004, and December 11, 2004.  Ex. A to Defendant's Reply.  In the letter, Plaintiff states that at the time of the events on December 2, 2004, she believed the man who entered the room worked for Margate Engineering.  Id.

Morgan avers that, at the time of Smith's hiring, and up to December 11, 2004, "there was nothing brought to the attention of SMI that Smith had ever in the past committed or had a propensity to commit any type of assault, especially a sexual assault."  Morgan Aff. at ¶ 5.  Smith testified that when he was initially hired by SMI, he was asked about any criminal record and he

disclosed that when he was sixteen years old he was charged with larceny and breaking and entering. Smith Dep. at 37. He also testified that he had no history of or conviction for any type of assault or sexual assault. Id. at 38. Smith further testified that any type of assault or sexual harassment would not be in the furtherance of SMI's business. Id. at 39.

III. **STANDARD OF REVIEW**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)(Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").  To raise a genuine issue of material fact, a party may not rest upon the mere allegations or denials of his pleadings.  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Respondeat Superior

Defendant SMI asserts that the doctrine of respondeat superior is inapplicable in the present case, thus precluding any liability on the part of SMI for Smith's actions.  The doctrine of respondeat superior rests upon the relation of master and servant.  Lane v. Modern Music, Inc., 244 S.C. 299, 136 S.E.2d 713, 716 (1964).   Under the doctrine of respondeat superior, the employer is liable for the acts of an employee acting within the scope of employment.  Id.  "It is well settled that the liability of the master for the torts of his servant arises only when the servant is acting about the master's business, within the scope of his employment; if he is upon his own business acting outside of his employment the master is not liable."  Id.  "The act of a servant done to effect some

-6-

independent purpose of his own and not with reference to the service in which he is employed, or while he is acting as his own master for the time being, is not within the scope of his employment so as to render the master liable therefor." Id. "If a servant steps aside from the master's business for some purpose wholly disconnected with his employment, the relation of master and servant is temporarily suspended; and this is so no matter how short the time, and the master is not liable for his acts during such time." Id. (citing Hancock v. Aiken Mills, 180 S.C. 93, 185 S.E. 188 (1936); Hyde v. Southern Grocery Stores, 197 S.C. 263, 15 S.E.2d 353 (1941)).

SMI asserts that Smith was acting outside the scope of his employment at the time of the assault on Plaintiff. Plaintiff notes that, in his deposition, Smith testified that, on December 11, 2004, he worked for SMI from 10:00 a.m. until 3:30-4:00 p.m. Smith Dep. at 24-27. When he first saw Plaintiff in the hall with her cart, he asked her if she was planning to clean the unit in which he was working because his work would have prevented her from doing much cleaning. Id. at 28. He later asked her for a towel or washcloth to clean up some paint that was on the floor. Id. at 29-30. Plaintiff argues that his attempt to obtain towels to use in cleaning up the mess he made while working for SMI was within the scope of his employment. Sheila Morgan avers that "Smith's conduct toward the Plaintiff was not consistent with, beneficial for or in and about the course and scope of his employment with SMI." Morgan Aff. at ¶ 9.

Plaintiff is likely correct that his attempt to obtain towels to clean up his mess was within the scope of his employment with SMI. However, viewing the facts in a light most favorable to Plaintiff, Smith also asked her to take a break and then grabbed her arm and attempted to pull her into his unit. Plaintiff's complaint revolves around these actions of Smith, not his inquiry as to whether he could have a towel. As noted above, when an employee steps aside from his employer's

business for some independent purpose of his own, then the employee/employer relationship is temporarily suspended, "no matter how short the time," and the employer is not liable for the actions of the employee during that time.  Lane, 136 S.E.2d at 716.  Plaintiff speculates that Smith could have grabbed her because he wanted her to help him clean up his unit.  However, she presents no evidence to support such a speculation.

The undersigned finds that Smith's alleged grabbing of Plaintiff falls outside the scope of his employment with SMI.  "An act is within the scope of a servant's employment where reasonably necessary to accomplish the purpose of his employment and is in furtherance of the master's business."  Id.  In Hamilton v. Davis, 300 S.C. 411, 389 S.E.2d 297 (Ct. App. 1990), the plaintiff sued the owner of some rental properties for personal injuries caused by the manager of the rental properties when the manager pushed the plaintiff with a truck door.  At the time of the incident, the manager was removing some debris from the plaintiff's yard.  Id. at 413, 389 S.E.2d at 298.  As the manager was sitting in the truck with the door open, the plaintiff stepped up to the truck to talk to him.  Id.  At some point the manager starting laughing and, while engaging in horseplay, put the truck in reverse, hitting the plaintiff with the door of the truck.  Id.  The court found that the manager momentarily stepped away from his employer's business when he committed the assault upon the plaintiff, and, thus, the employer was not liable for the manager's actions.  Id. at 417, 389 S.E.2d at 300.  As stated by the court in Hamilton,

> The general rule is that an employer is not liable to a customer, patron or other person for an assault arising out of acts of mischief or horseplay indulged in by the employee unless it is shown that the employer was or should have been so aware of the propensities of the employee in that direction as to make him negligent for having retained him in the employ, since such acts are not to be considered incidental to the work which he is hired to perform but are of a personal nature, indulged in for the personal amusement of the employee and not in furtherance of the master's interest.

-8-

Id. at 416-17, 389 S.E.2d at 299-300.

Likewise, in the present case, Smith momentarily stepped away from the business of SMI when he allegedly grabbed Plaintiff. The act of grabbing was not reasonably necessary to accomplish the purpose of his employment. The applicability of this doctrine to the claims asserted by Plaintiff is discussed below.

### B.     Civil Rights Claims under 42 U.S.C. § 1981

Plaintiff asserts claims for sexual discrimination, racial discrimination, and discrimination based on national origin, all pursuant to 42 U.S.C. § 1981. As an initial matter, it should be noted that courts have held that § 1981 does not apply to discrimination claims based on gender or national origin. See Bobo v. ITT Continental Baking Co., 662 F.2d 340, 342 (5th Cir. 1981) ("although § 1981 strikes at many forms of racial discrimination, no court has held that allegations of gender based discrimination fall within its purview"); St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) (holding that Plaintiff could maintain an action under § 1981 if he "can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin").[2] Thus, those claims fail as a matter of law.

As for Plaintiff's claim of racial discrimination under § 1981, she must prove "both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." Denny v. Elizabeth Arden Salons, Inc., 456 F.3d 427, 434 (4th Cir. 2006).

Courts within the Fourth Circuit disagree as to whether the doctrine of respondeat superior applies in § 1981 cases. Compare Collin v. Rector and Bd. Of Visitors of Univ. of Va., 873 F.Supp.

_____

[2]See Report and Recommendation (Document # 68), filed contemporaneously herewith, recommending that Defendant Hilton's Motion for Judgment on the Pleadings be granted, for a more thorough analysis on this issue.

1008, 1014 (W.D.Va. 1995) (holding there is no respondeat superior liability under § 1981 <u>with</u>

<u>Williams v. Cloverland Farms Dairy, Inc.</u>, 78 F.Supp.2d 479, 485 (D.Md. 1999) (holding that

employers have respondeat superior liability for their employees' actions in certain instances under

§ 1981). Nevertheless, Plaintiff has failed to present evidence to establish that SMI is liable under

§ 1981 regardless of whether the doctrine applies. If the doctrine does not apply, Plaintiff has failed

to present any evidence that SMI intentionally discriminated against her based on her race. Even if

respondeat superior does apply in § 1981 cases, it is inapplicable here because Smith was acting

outside the scope of his employment when he grabbed Plaintiff's arm. Thus, summary judgment is

appropriate as to Plaintiff's § 1981 claim for race discrimination against SMI.

### C. Intentional Tort Claims

Plaintiff asserts three intentional tort claims: (1) false arrest, (2) battery, and (3) emotional

outrage. An employer can be liable for an employee's intentional torts if the employee is acting

within the scope of his employment at the time he commits the intentional torts. <u>See</u> <u>Crittenden v.</u>

<u>Thompson-Walker Co., Inc.</u>, 288 S.C. 112, 115-16, 341 S.E.2d 385 (Ct. App. 1986) (employer liable

for assault committed by employee where employee committed the assault in the collection of a debt

owed by plaintiff to the employer). However, as discussed above, Smith was acting outside the

scope of his employment when he grabbed Plaintiff's arm. Smith's conduct was not reasonably

necessary to accomplish the purpose of his employment, nor was it in furtherance of SMI's business.

Thus, SMI is not vicariously liable for Smith's actions.

In addition, to the extent Plaintiff asserts that SMI's own conduct constitutes false arrest,

battery and emotional outrage, such claims must also fail. False arrest requires three essential

elements: (1) the defendant restrained the plaintiff; (2) the restraint was intentional; and (3) the

restraint was unlawful.  Andrews v. Piedmont Air Lines, 297 S.C. 367, 371-72, 377 S.E.2d 127, 130 (Ct.App.1989).  Plaintiff has not presented evidence that SMI restrained her.  The intentional tort of battery is, "the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient."  Gathers v. Harris Teeter Supermarket, Inc., 282 S.C. 220, 230, 317 S.E.2d 748, 754 (Ct. App. 1984).  Plaintiff has not presented any evidence that SMI made any forcible contact with her. Finally, emotional outrage, or intentional infliction of emotional distress, requires a showing that

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community, (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable man could be expected to endure it.

Ford v. Hutson, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981) (internal citations omitted).  Plaintiff has failed to present evidence that SMI engaged in any conduct that would constitute emotional outrage.  Accordingly, summary judgment is proper on Plaintiff's claims for false arrest, battery, and emotional outrage against SMI.

### D.    Negligence Claims

Plaintiff claims that SMI was negligent in hiring, training, and supervising Smith, and in failing to heed Plaintiff's complaint against Smith and take corrective action.  These claims are directed at the conduct of SMI, rather than an attempt to hold SMI vicariously liable for the actions of Smith through the doctrine of respondeat superior.  Nevertheless, Plaintiff still fails to present sufficient evidence to establish these claims against SMI.

-11-

All of Plaintiff's negligence claims[3] require knowledge on the part of SMI that Smith had the capacity to commit the type of conduct alleged by Plaintiff. Negligent hiring and retention cases generally turn on two "fundamental elements–knowledge of the employer and foreseeability of harm to third parties." <u>Doe v. ATC, Inc.</u>, 367 S.C. 199, 206, 624 S.E.2d 447, 450 (Ct.App. 2005). "The standard, according to the Restatement section 317 comment c, is whether the employer knew the offending employee was 'in the habit of misconducting [himself] in a manner dangerous to others.'" <u>Id.</u> There is no evidence in the record that SMI knew or should have known at the time of hiring Smith of any propensities to commit assault or battery. SMI did inquire as to his criminal history and discovered that Smith had been charged for larceny and breaking and entering several years prior. This information, standing alone, is insufficient to put SMI on notice that Smith was in the <u>habit</u> of misconducting himself in a manner dangerous to others. Thus, Plaintiff's claim for negligent hiring fails.

To the extent Plaintiff alleges that SMI was negligent in retaining Smith following the incident regarding the note on Plaintiff's cart, Plaintiff fails to establish that SMI had any knowledge of the event. In fact, the evidence in the record shows that, prior to December 11, 2004, Plaintiff thought the person who left the note on her cart was employed by Margate Engineering, and it was only after Plaintiff saw Smith enter an SMI van on December 11, 2004, that she realized he was employed by SMI. The conclusory allegation set forth in the Complaint that Plaintiff's employer

---

[3]Plaintiff's claim that SMI was negligent "in failing to heed the Plaintiff's complaint against Defendant [Smith] and take corrective action," <u>see</u> Amended Complaint at ¶ 30(c), can be read as alleging negligent retention. In her Response to SMI's motion, Plaintiff asserts that the complaint to which she refers is the complaint Plaintiff made to her supervisors in November 2004. Presumably, this is the complaint regarding the "for a good time" note left on her cart. Plaintiff appears to allege that SMI was negligent in retaining Smith in its employ following Plaintiff's complaint about the note.

notified SMI of Plaintiff's complaint regarding the note, without any support in the record, is insufficient to create a question of fact on the issue. Thus, without any knowledge of Plaintiff's previous complaint, SMI cannot be liable for negligent retention or negligent failure to heed Plaintiff's complaint and take corrective action. Additionally, even assuming for the sake of argument that SMI had knowledge of the note, the note did not indicate a propensity to harm.

Plaintiff's claim of negligent supervision and training[4] likewise fails for lack of sufficient evidence to establish such a claim. An employer may be liable for negligent supervision if the employee intentionally harms another when the employee: (1) is upon the premises of the employer, or is using a chattel of the employer, (2) the employer knows or has reason to know that he has the ability to control his employee, and (3) the employer knows or should know of the necessity and opportunity for exercising such control. Degenhart v. Knights of Columbus, 309 S.C. 114, 115-117, 420 S.E.2d 495, 496 (1992). Plaintiff has presented insufficient evidence to establish that SMI knew or should have known of the necessity for exercising control over Smith. Thus, summary judgment is also proper on the claim of negligent supervision and training.

## V.      CONCLUSION

In light of the above analysis, it is recommended that Defendant SMI's Motion for Summary Judgment (Document # 23) be granted.

---

[4]It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision. However, to the extent it is a separate cause of action, Plaintiff has failed to present evidence that SMI had a duty to train Smith not to grab or assault others. See Brown v. South Carolina Ins. Co., 284 S.C. 47, 324 S.E.2d 641 (Ct.App.1984) (noting the required elements for a negligence claim: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately resulting from the breach of duty).

-13-

 s/Thomas E. Rogers, III     
Thomas E. Rogers, III
United States Magistrate Judge

January 17, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice contained of the following page.**